U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED
MONROE
MAR 24 2009
ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| HOWARD FLOYD, ET AL. | CIVIL ACTION NO. 07-1393 |
| VERSUS | JUDGE ROBERT G. JAMES |
| CANAL INDEMNITY CO. | MAG. JUDGE MARK L. HORNSBY |

## RULING

Pending before the Court are a partial motion for summary judgment filed by Plaintiffs Howard and Carolyn Floyd (collectively referred to as the "Floyds") [Doc. No. 14] and a cross-motion for summary judgment filed by Defendant Canal Indemnity Company ("Canal") [Doc. No. 21].

For the following reasons, the motions are GRANTED IN PART and DENIED IN PART.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

This suit arises out of a October 10, 2006 motor vehicle accident in which Plaintiff Howard Floyd ("Mr. Floyd") was involved in. The Floyds seek uninsured/underinsured motorist ("UM") benefits from Canal, Mr. Floyd's insurer.

Canal issued an automobile liability policy to Mr. Floyd, doing business as "H. Floyd Trucking," for an effective policy period of October 4, 2006, through October 4, 2007. John Poland ("Poland"), an insurance agent of Wilkins Agency, LLC ("Wilkins Agency"), came to Mr. Floyd's home and presented him with an application of insurance and an Uninsured/Underinsured Motorist Bodily Injury Coverage form ("2006 UM Form"). On the 2006 UM Form, Mr. Floyd elected to waive UM coverage.

Canal had issued similar policies to Mr. Floyd for the past four (4) years. In each of those years, Poland came to Mr. Floyd's home and presented him with an application of insurance and UM Form. In each prior policy period, Mr. Floyd elected to waive UM coverage.

On June 13, 2007, the Floyds filed suit in the 37th Judicial District Court, Parish of Caldwell, State of Louisiana, against Canal for UM benefits. [Doc. No. 1-2].

On August 23, 2007, Canal removed the case to this Court. [Doc. No. 1].

On April 11, 2008, the Floyds filed a motion for partial summary judgment [Doc. No. 14], seeking a judgment that Mr. Floyd's insurance policy provided UM coverage on October 10, 2006, in the amount of $500,000.

On April 25, 2008, Canal filed a cross-motion for summary judgment [Doc. No. 21], contending that Mr. Floyd waived coverage for the 2006 policy period, and, therefore, the claims against Canal must be dismissed.

On April 29, 2008, Canal filed a memorandum in opposition [Doc. No. 25] to the Floyds' motion for partial summary judgment.

On May 13, 2008, the Floyds filed a memorandum in opposition [Doc. No. 27] to Canal's motion for summary judgment.

On May 16, 2008, the Floyds filed a supplemental memorandum in support of their motion for partial summary judgment. [Doc. No. 31].

On June 6, 2008, Canal filed a reply memorandum [Doc. No. 38] in support of its motion for summary judgment. In the reply, Canal contended for the first time that the prior waivers of UM coverage are valid and apply through the date of the accident in this case, regardless of the validity of the most recent waiver.

On June 11, 2008, the Court requested supplemental briefing and summary judgment evidence regarding whether the prior waivers of UM coverage are valid. [Doc. No. 39].

Following delays for additional discovery and briefing, both parties filed supplemental memoranda on February 27, 2009. [Doc. Nos. 53 & 54].

## II. LAW AND ANALYSIS

At issue in this case is whether Mr. Floyd validly waived UM coverage in 2006 or the prior policy periods.

### A. 2006 UM Form

The parties dispute whether the 2006 UM Form was properly completed and thus whether the waiver of UM coverage is valid.

"UM insurance coverage in Louisiana is governed by the provisions of La. Rev. Stat. 22:680." *Gray v. Am. Nat'l Prop. & Cas. Co.*, 2007-CC-1670 (La. 2/26/08); 977 So. 2d 839, 844. "UM coverage will be read into the policy unless validly rejected." *Duncan v. U.S.A.A. Ins. Co.*, 06-CC-363 (La. 11/29/06); 950 So. 2d 544, 547 (citations omitted). "[T]he statutes providing for UM coverage in the absence of a valid rejection or selection of lower limits must be liberally construed, while the statutory exceptions to UM coverage must be strictly construed." *Gray*, 977 So. 2d at 845 (citing *Duncan*, 950 So. 2d at 547). "Any exclusion from coverage must be clear and unmistakable." *Id.* (citing *Duncan*, 950 So. 2d at 547). "[T]he insurer bears the burden of proving any insured named in the policy rejected in writing the coverage. . . ." *Duncan*, 950 So. 2d at 547.

The 2006 UM Form is a form document prescribed by the Louisiana Commissioner of Insurance ("Commissioner"). In *Duncan v. U.S.A.A. Insurance Co.*, the Louisiana Supreme Court held that "compliance with the form prescribed by the commissioner of insurance is necessary for

3

the UM waiver to be valid. The insurer cannot rely on the insured's intent to waive UM coverage to cure a defect in the form of the waiver." 950 So. 2d at 553. To validly effect a waiver of UM coverage using the form, the Louisiana Supreme Court held that "six tasks" must be completed:

> (1) initialing the selection or rejection of coverage chosen; (2) if limits lower than the policy limits are chosen. . ., then filling in the amount of coverage selected for each person and each accident; (3) printing the name of the named insured or legal representative; (4) signing the name of the named insured or legal representative; (5) filling in the policy number; and (6) filling in the date.

*Id.* at 551.

The Floyds contend that the 2006 UM Form was not properly completed because: (1) the UM Form did not contain the policy number; (2) Poland, the insurance agent, wrote the date and printed Mr. Floyd's name on the UM Form; and (3) Canal's name was not included on the UM Form. Canal moved for summary judgment in opposition to each of the Floyds' contentions.

### 1. Policy Number

The parties dispute whether a policy number was required to be filled in on the 2006 UM Form.

"In the case where a policy number is not available, the space for the policy number may be left blank or a binder number may be inserted." Louisiana Commissioner of Insurance, LIRC 98-03; *see also Gray*, 977 So. 2d at 847 n.2 (quoting *Carter v. State Farm Mut. Auto. Ins. Co.*, 07-1294 (La. 10/5/97), 964 So. 2d 375) (holding that if the policy number "'does not exist at the time the UM waiver form is completed,'" "only five 'tasks' would be necessary for a valid UM selection form").

Canal contends that a policy number was not in existence when Mr. Floyd signed the UM Form on October 2, 2006. Canal relies on the testimony of Poland, Debby Cleghorn ("Cleghorn"), and Brenda Bryant ("Bryant").

Poland is the producing agent for Wilkins Agency. Although Canal issued the policy of insurance, Wilkins Agency obtained the policy from Canal through Cooper & Cohorts, Inc. ("Cooper & Cohorts"), the surplus line broker. Poland testified to his normal procedure for acquiring a renewal policy: (1) he obtains a renewal quote from Cooper & Cohorts; (2) he reviews the quote with the insured; (3) if the insured agrees to the quote for the renewal policy, he meets with the insured to execute the application of insurance and UM Form; (4) once the documents are executed, he forwards them to a customer service representative at Wilkins Agency; (5) if the documents are deemed complete, the customer service representative forwards the documents to Cooper & Cohorts; and (5) within two to three weeks, a policy of insurance is issued and a policy number is assigned. Poland testified that he followed this procedure in obtaining a renewal policy for Mr. Floyd in October 2006.

Cleghorn, the customer service representative for Wilkins Agency, confirmed Poland's account and testified that "[a]t the time that I received the mailed executed documents, including the application and [UM Form] from John Poland, a policy number would not have been issued yet." [Doc. No. 21-11, Exh. 5, Cleghorn Affidavit, ¶6].

Bryant, the office manager for Cooper & Cohorts, also confirmed Poland's account. She testified that Canal provided Cooper & Cohorts with a log or block of policy numbers that Cooper & Cohorts could assign to future policies. She also testified that a policy number is assigned once Cooper & Cohorts issues a policy of insurance. With respect to Mr. Floyd's policy, she testified that she received the documents from Wilkins Agency on October 10, 2006, and issued a policy of insurance on October 13, 2006, with an effective date of October 4, 2006. She also testified that "[t]he policy number was assigned by Cooper & Cohorts, Inc. after the insured executed the

5

application and [UM Form]. Thus, a policy number did not exist on the date that the insured executed the application and [UM Form] on October 2, 2006." [Doc. No. 21-12, Exh. 6, Bryant Affidavit, ¶8].

The Floyds dispute whether Canal via Cooper & Cohorts was willing and able to assign a policy number before a policy of insurance was issued. The Floyds first contend that because Cooper & Cohorts had a block of policy numbers available, Cooper & Cohorts could have assigned a new policy number to Mr. Floyd when he executed the UM Form. The Floyds also rely on a series of emails showing that a policy number was assigned to Mr. Floyd's policy before the policy of insurance was issued. On October 5, 2006, Matt Wimberly ("Wimberly"), the Wilkins Agency branch manager, sent an email to Bryant requesting that she bind coverage and issue a policy number for Mr. Floyd's renewal policy with an effective date of October 4, 2006. There is a handwritten note on a printed copy of the emails that states "10-4-06. 12:01AM. L049417." [Doc. No. 27-7, Exh. 5]. The Floyds also point to an invoice dated October 6, 2006, sent by Cooper & Cohorts to Wilkins Agency, which includes Mr. Floyd's new policy number, "LO49417." [Doc. No. 27-9, Exh. 7].

Canal responded with a supplemental affidavit from Bryant. [Doc. No. 38-5, Exh. 3-1]. Bryant testified that although it was normal practice for Cooper & Cohorts to assign a policy number only after a policy of insurance had been issued, in this case, Cooper & Cohorts made an exception in response to an email request from Wilkins Agency. Bryant testified that a policy number was assigned earlier than usual because Mr. Floyd's "renewal policy application documents had been completed and funds had been received." [Doc. No. 38-5, Exh. 3-1, ¶12]. She further testified that "the policy number was assigned at least by October 6, 2006[,] and may have been assigned on

6

October 5, 2006," but "I can...definitely confirm that a policy number was not available on October 2, 2006[,] because we had not received confirmation that the application documents...had been completed." [Doc. No. 38-5, Exh. 3-1, ¶12].

Canal also provided an affidavit from Wimberly, the Wilkins Agency branch manager. [Doc. No. 38-7, Exh. 4]. He testified that he received the completed application of insurance, UM Form, and premium payment on October 5, 2006. [Doc. No. 38-7, Exh. 4, Wimberly Affidavit, ¶¶3, 4]. He also testified that a policy number had not been assigned as of October 5, 2006. [Doc. No. 38-7, Exh. 4, Wimberly Affidavit, ¶5].

Finally, Canal offered testimony from Jerri Garrett, an underwriter at Cooper & Cohorts; Bryant; Bob Greene, the Assistant Vice President of Underwriting with Canal; and Wimberly. Each testified that Canal's/Cooper & Cohorts's practice is to assign a policy number only after a completed application of insurance and UM Form are received. [Doc. No. 54-2, Exh. A, Garrett Depo., 8:25–9:2, 11:3–15, 26:6–18; Exh. B, Bryant Depo., 44:9–19; Doc. No. 54-3, Exh. C, Greene Affidavit, ¶5; Doc. No. 54-3, Exh. D, Wimberly Depo., 16:16–17:11; Doc. No. 54-3].

The crux of this issue is whether a policy number was in "existence" or "available" when Mr. Floyd executed the UM Form on October 2 or 4, 2006.[1] Neither the Louisiana Supreme Court nor the Commissioner have explained what it means for a policy number to be in "existence" or "available." Louisiana Court of Appeals have held that a policy number was not in "existence" or "available" when the UM form was executed based on evidence that the insurer did not assign a policy number until the policy of insurance had been issued. *See, e.g., Baide v. Allen*, 07-CA-652

---

[1] The parties dispute when the UM Form, which is dated October 2, 2006, was signed by Mr. Floyd. The precise date is immaterial for purposes of this subissue, for the reasons explained *infra*.

(La. App. 5 Cir. 12/11/07); 974 So. 2d 688, 691 (relying on the uncontroverted affidavit of the insurance agent which stated that "the policy number was not available when the UM form was completed because the number is always contained on the policy, and the policy was sent after the application process"); *Ferguson v. Bocskov*, 07-CA-924 (La. App. 5 Cir. 3/25/08); 983 So. 2d 162, 164, 165 (holding that a policy number did not exist when insurance was applied for based on uncontroverted evidence that "[a] policy number was assigned by [the insurer] upon issuance of the policy following receipt of the application and waiver"); *Clement v. State Farm Mut. Auto. Ins. Co.*, 2008 CA 0014 (La. App. 1 Cir. 6/6/08); 992 So. 2d 506, 510 (same).

The Court adopts the reasoning of these cases and holds that a policy number is in "existence" or "available" if a policy number has actually been assigned or if it is the insurer's normal practice to assign a policy number at the time the UM form is executed. With this in mind, the Court will address each of the Floyds' arguments.

First, the fact that Cooper & Cohorts had a block of policy numbers from which it could assign a policy number does not, by itself, establish that a policy number was in "existence" or "available" when Mr. Floyd executed the UM Form.

Second, the Floyds have not shown that a policy number was assigned when Mr. Floyd signed the UM Form on October 2 or 4, 2006. The Floyds imply that a policy number may have been assigned as early as October 4, 2006, based on the handwritten notation "10/4/06" on a printed copy of emails. Those emails were dated October 5, 2006; therefore, the only reasonable inference that can be drawn from that notation is a reference to the effective date of the policy.

Finally, the Floyds rely on evidence that Canal assigned a policy number before a policy of insurance had been issued to suggest that a policy number could have been assigned earlier. Canal

has offered inconsistent testimony regarding whether it was its/Cooper & Cohorts's normal practice to assign a policy number once the completed documents are received or once a policy of insurance has been issued. However, the Floyds have not controverted Canal's claim that the earliest a policy number would be assigned is once the application of insurance and UM Form are deemed complete by Cooper & Cohorts. Further, the evidence provided by Canal is unequivocal with respect to whether a policy number would be assigned at the time Mr. Floyd executed the UM Form.

Accordingly, the Court finds that the Floyds have failed to raise a genuine issue of material fact regarding whether a policy number was in "existence" or "available." Canal's motion for summary judgment on this basis is GRANTED, and the Floyds' motion for summary judgment is DENIED.

### 2. Date & Printed Name of the Insured

The parties dispute whether Poland was permitted to write the date and print Mr. Floyd's name on the UM Form and whether he in fact did so.

The printed name of the named insured or legal representative and the date must be written on the UM Form for an insured to validly waive UM coverage. *Duncan*, 950 So. 2d at 551. In *Gray*, the insurance agent had filled in portions of the UM Form after the insured signed it. The Louisiana Supreme Court held that the waiver was invalid because "[a]n insurer who is unable to prove that the UM selection form was completed before it was signed by the insured simply cannot meet its burden of proving by clear and unmistakable evidence that the UM selection form is valid." *Gray*, 977 So. 2d at 849. Based on the foregoing authority, the Court holds that, although the UM Form must be completed at the time the agent meets with the insured and obtains the insured's signature, there is no requirement that the **insured** complete each space of the UM Form (except for an implicit

requirement that the insured actually initial and sign the form).

The dispositive issue before the Court is whether there is a genuine issue of material fact regarding whether the date and insured's printed name were written on the UM Form when Mr. Floyd signed it.

**a.  Date**

The Floyds initially moved for summary judgment on the basis that "neither Howard Floyd nor his wife dated the form. The form was dated by Canal[']s agent, John Poland. Therefore, the [UM Form] was deficient. . . .[because] the insured did not date the form." [Doc. No. 18, p. 3]. Consistent with this argument, Mr. Floyd initially testified that the date was written on the UM Form when he signed it on October 2, 2006. *See* [Doc. No. 27-3, Depo. Howard Floyd, 89:19–21 ("And it's got a date over there of October 2, 2006. Is that the date in which you believe you signed that document? Uh-huh, it sure is."), 89:25–90:1 ("Was the date completed when you signed it? I'm pretty sure it was.")].

Canal moved for summary judgment and opposed the Floyds' motion for summary judgment, contending that an insurance agent can complete portions of the UM Form, so long as the agent does so before the insured signs it. *See Gray*, 977 So. 2d at 849. Poland testified that he wrote the date and printed Mr. Floyd's name on the UM Form before Mr. Floyd signed it. [Doc. No. 21-10, Exh. 4, ¶5].

Mr. Floyd then changed his testimony in response to Canal's motion for summary judgment: "At the time I signed and initialed the [UM Form] my name was not printed on the form and the form was not dated." [Doc. No. 27-5, Exh. 3, Floyd Affidavit, ¶3]. Mr. Floyd also testified for the first time that he signed the UM Form on October 4, 2006, not October 2. [Doc. No. 27-5, Exh. 3,

10

Floyd Affidavit, ¶2]. The Floyds argued that Mr. Floyd changed his testimony because he learned that the premium payment check was dated "October 4, 2006." [Doc. No. 27-4, Exh. 2; Doc. No. 27-5, Exh. 3, Howard Floyd Affidavit, ¶¶2, 3]. Mrs. Floyd confirmed Mr. Floyd's account and testified that Poland came to their house on October 4, 2006, and placed "blank forms" in front of Mr. Floyd to sign. [Doc. No. 27-6, Exh. 4, Carolyn Floyd Affidavit, ¶1]. The Floyds supplemented their motion for summary judgment and opposed Canal's motion for summary judgment on the basis of Mr. Floyd's new testimony, arguing that "[t]he failure to have Mr. Floyd print his name on the UM Form and date the UM Form...renders the UM rejection invalid. Likewise, the filling in of the wrong date by the insurance agent, John Poland, would also nullify the UM rejection." [Doc. Nos. 27, p. 3, 31, p. 3].

Canal responded that Mr. Floyd's new testimony that he signed a blank UM Form on October 4, 2006, is inadmissible summary judgment evidence because it contradicts his prior sworn testimony. In addition, Canal offered Poland's receipt book, which includes a receipt dated October 2, 2006, confirming receipt of Mr. Floyd's premium payment on that date. [Doc. No. 38-3, Exh. 2, Poland Affidavit, ¶2, p. 4].

A party cannot "defeat a motion for summary judgment using an affidavit that impeaches **without explanation** sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) (emphasis added). Mr. Floyd has offered a plausible explanation for why he changed his testimony regarding the date he signed the UM Form, but he has not explained why he changed his testimony regarding whether the date was written on the UM Form when he signed it. Therefore, the Floyds cannot rely on Mr. Floyd's subsequent testimony that the space for the date was blank when he signed the UM Form.

The Floyds can, however, rely on Mrs. Floyd's testimony that the UM Form was blank when Mr. Floyd signed it. While Canal may quarrel with the credibility of her testimony, that is not an issue the Court can resolve on summary judgment.[2] Because the Court finds that there is a genuine issue of material fact regarding when and whether the date was written on the UM Form when Mr. Floyd signed it, Canal's and the Floyds' motions for summary judgment on this basis are DENIED.

### b. Printed Name of the Insured

The Court finds that there is a genuine issue of material fact with respect to the insured's printed name as well. Poland avers that he wrote Mr. Floyd's printed name on the UM Form before Mr. Floyd signed it. However, Mr. Floyd has consistently testified that the space for his printed name was blank when he signed the form. Mr. Floyd initially testified that the UM Form was blank with respect to the information above his signature; the space for his printed name is located above the space for his signature. *See* [Doc. No. 27-3, Depo. Howard Floyd, 89:22–24 ("And was any of this information that you see above your signature completed on the document when you signed it? No, it was not.")]. He later testified more explicitly that his name was not printed on the UM Form before he signed it. *See id.* at 496 ("When an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment."). While Canal quarrels with the credibility of his testimony, that is an issue reserved for the factfinder. Canal's and the Floyds' motions for summary judgment on this basis are DENIED.

---

[2]Canal has not pointed to evidence indicating that Mrs. Floyd's testimony on this issue is inconsistent.

12

### 3. Insurer's Name

The parties dispute whether Canal's name was required to be placed on the UM Form.

On August 7, 1998, the Commissioner issued a bulletin stating that "[f]or identification, the company name must be placed at the lower left-hand corner of the UM Form. If a company currently uses a group name on forms, then the group name may be used instead of the individual company name." Louisiana Commissioner of Insurance, LIRC 98-03 (8/7/98).

In *Gingles v. Dardenne*, the Louisiana Third Circuit Court of Appeal held that a UM Form did not effect a valid waiver of UM coverage because the insurer's name was not included on the Form. 08-448 (La. App. 3 Cir. 11/26/08) 998 So. 2d 795, 798–800. Recently, the Louisiana Supreme Court reversed that decision:

> It is undisputed that the pertinent designated spaces on the form were filled out. Additionally, the form at issue in these proceedings satisfies all of the requirements of our opinion in *Duncan*. Under these circumstances, we find [that the insurer] has established it is entitled to judgment as a matter of law [that the insured validly waived UM coverage].

*Gingles v. Dardenne*, 2008-C-2995, slip op. at 2 (La. 3/13/09) (per curiam).

Although compliance with the six tasks identified in *Duncan* is disputed in this case, the Court finds that the Louisiana Supreme Court's holding is nonetheless applicable and dispositive of this issue. Accordingly, the Court finds that Canal's name was not required to be placed on the 2006 UM Form.

Canal's motion for summary judgment on this basis is GRANTED, and the Floyds' motion for summary judgment is DENIED.

### B. Prior UM Forms

If Mr. Floyd validly waived UM coverage in the prior policy periods, then his waiver of UM

13

coverage remained valid through the date of the accident in this case. *See Rashall v. Pennington*, 2008-0001 (La. App. 3 Cir. 4/30/08); 982 So. 2d 301, 305 ("an initial valid rejection of UM coverage is also valid for renewal, reinstatement, or substitute policies"); *see also* LA. REV. STAT. 22:680(1)(a)(i)-(ii). The parties dispute whether the prior UM forms were properly completed.

Canal contends that each prior UM form was properly executed: each UM form (1) was initialed and signed by Mr. Floyd; (2) contained the printed name of the insured, the name of the insurer, and the date; and (3) did not contain a policy number because none was available when the forms were executed. Canal offers the testimony of Poland who averred that "each UM Form was completed at the time Howard Floyd signed the UM Form." [Doc. No. 38-3, Exh. 2-1, Poland Affidavit, ¶4]. Poland also later testified by deposition that he printed Mr. Floyd's name and wrote the date on the UM forms for 2003 and 2005; with respect to the 2004 UM form, he testified that he printed the name but not the date. [Doc. No. 54-3, Exh. E., Depo. Poland, 11:8–12:9, 14:12–19].

The Floyds contend that Poland's subsequent deposition testimony contradicts his prior affidavit testimony. In his deposition, Poland testified that he had presented insureds with blank applications of insurance or UM forms in the past and that he could not specifically remember whether the forms at issue were completed before Mr. Floyd signed them. In contrast, Mr. Floyd testified unequivocally that the UM forms were always blank when he signed them. [Doc. No. 53-3, Depo. Howard Floyd, 10:18–24, 11:16–12:2, 14:9–13].

Canal responds that Mr. Floyd undermined his testimony as well because he testified that he could not independently remember the meetings with Poland in which he executed the UM forms. [Doc. No. 54-4, Exh. G, 11:16–22, 15:3–10]. Canal also "reminds" the Court that Floyd changed his testimony about an unrelated issue and offers several reasons why Mr. Floyd's current and self-

serving testimony is not credible.

If Mr. Floyd's printed name and the date were not written on the UM forms when Mr. Floyd signed them, then the prior waivers of UM coverage are invalid. Contrary to Canal's claim, Mr. Floyd's testimony is unequivocal with respect to whether the UM forms were always blank when he signed them. Because the Floyds have controverted Canal's claim, Canal's motion for summary judgment on this basis is DENIED.

The more difficult question is whether to grant the Floyds summary judgment. The Floyds did not expressly move for summary judgment on this issue, but both parties were given notice by the Court on June 11, 2008, that this issue was potentially dispositive as to both motions for summary judgment. *See* [Doc. No. 39]. In addition, both parties were given the opportunity to provide supplemental briefing and evidence and did so. Therefore, the Court finds that it is appropriate to *sua sponte* render summary judgment in favor of the Floyds if warranted. *See Judwin Props., Inc. v. U.S. Fire Ins. Co.*, 973 F.2d 432, 436 (5th Cir. 1992) ("A district court may grant a motion for summary judgment *sua sponte*, provided that it gives proper notice to the adverse party.") (citing FED. R. CIV. P. 56(c)).

Although Poland testified in his affidavit and deposition that he wrote Mr. Floyd's printed name and the date on most of the prior UM forms, he then undermined that testimony as follows:

> Q. Did I understand your testimony correctly that you do not have any personal recollection of whether or not each of the applications for insurance for the past five policy years was fully completed before Mr. Floyd signed them for each of those policy years?
>
> A. I can't - - I don't remember.
>
> Q. O.K. Mr. Floyd testified that on one or more occasions that the application for insurance was submitted to him blank and that he signed blank forms, you don't have

15

> enough personal recollection or knowledge to say whether or not that's true or untrue, is that what you're saying?
>
> A. It could have happened.
>
> Q. You simply don't remember?
>
> A. Not on the previous ones, no.

[Doc. No. 53-2, Poland Depo., 43:21–44:9]. In this testimony, Poland admits that he lacks personal knowledge to testify that he wrote Mr. Floyd's printed name and the date on most of the prior UM forms. Canal has, therefore, failed to raise a genuine issue of material fact in response to Mr. Floyd's unequivocal testimony on this issue. The Court finds that the prior waivers of UM coverage are invalid.

The Court *sua sponte* GRANTS summary judgment in favor of the Floyds on this issue, and Canal's motion for summary judgment on this basis is DENIED.

## III. CONCLUSION

For the foregoing reasons, the Floyds' motion for partial summary judgment [Doc. No. 14] is DENIED, and Canal's cross-motion for summary judgment [Doc. No. 21] is GRANTED IN PART and DENIED IN PART. Both motions for summary judgment are denied with respect to whether the date and insured's printed name were written on the 2006 UM Form when it was executed.

The Court *sua sponte* GRANTS summary judgment in favor of the Floyds with respect to whether the prior waivers of UM coverage are valid.

MONROE, LOUISIANA, this 24 day of March, 2009.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE